IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **AYODEJI AWE** | § | |
| | § | |
| *Plaintiff* | § | |
| | § | **Civil Action No. 4:22-cv-03119** |
| **vs.** | § | |
| | § | |
| **HARRIS HEALTH SYSTEM** | § | |
| | § | |
| *Defendant* | § | |
| | § | |

## PLAINTIFF'S CORRECTED AMENDED AND SUPPLEMENTAL COMPLAINT[1]

**COMES NOW** the Plaintiff, Ayodeji Awe ("Plaintiff" or "Awe") who files this Corrected Amended and Supplemental Complaint, respectfully showing unto the Court the following:

### INTRODUCTON

1. Plaintiff, Ayodeji Awe, brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16 ("Title VII"), as amended, the Age Discrimination in Employment Act, 29 USC §621, et seq., to remedy acts of employment discrimination and retaliation perpetrated against him by the Defendant or its agents.

### Jurisdiction

2. This Court has jurisdiction over the subject matter of this civil action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16 and The Age Discrimination in Employment Act, 29 USC§ 621, et. seq.

---

[1] Plaintiff inadvertently filed the draft of the Amended Petition on 12/23/2022.

**Venue**

2.  Venue is proper in this judicial district under 42 U.S.C. Section 2000e-5(f)(3) and 5 U.S.C. § 7703(b)(2); as Plaintiff applied for employment with Defendant in metropolitan Houston, Texas, Plaintiff's employment records are maintained by the Defendant in this judicial district, and decisions adverse to Plaintiff's employment that are the subject of this civil action were made in this judicial district. All the Defendants' agents/witnesses mentioned in this complaint worked for the Defendant in this District and took action against Plaintiff in this District while acting within the scope of their employment with the Defendant.

**Parties**

3.  Plaintiff, Ayodeji Awe, a 67-year-old male, is a citizen of the United States and a resident of Texas.

4.  Defendant Harris Health System (hereinafter "Defendant Harris Health" or "Defendant") is a unit of government and hospital district duly organized under Article 9 of the Texas Constitution. Defendant has two hospitals, namely, Ben Taub and Lyndon B. Johnson ("LBJ"). The hospitals operate under the same management, especially at the upper level. Defendant has been served process through its chief executive officer, Esmaeil Porsa, at 2525 Holly Hall, Houston, Texas 77054.

**Statement of Facts**

5.  Plaintiff Ayodeji Awe, (hereinafter "Awe") a 67-year-old, black male, citizen of the United States. He was hired by Harris Health System LBJ Hospital Division around August 2009 as a Chaplain Resident. He subsequently became a Chaplain.

6. A chaplain is someone trained to meet the spiritual, religious and emotional demands and needs of others, particularly those suffering some emotional pain, depression, grief, or other pain through counseling, prayers, spiritual care, and other prescribed acceptable means. It involves providing a calm, honest, guiding light to one in emotional and spiritual distress, relieving them of some of the burden while providing them with a path forward. A chaplain is a special person who is called by God to maintain a disciplined life and ministry. A chaplain when operating within the environment of Christian faith, must be an example and demonstrate Christ-Like qualities that would cause others to see Christ within him or her for their good. Outside of that faith, he would be a facilitator to others' faith preferences and assist in achieving their goals of spiritual, religious and emotional healing and upliftment. Chaplains are trained to imbibe the principle of 'Cultural Humility'- respecting the culture of the patients or the way they prefer to be ministered to especially when they express such. A chaplain must never compromise his or her religious beliefs or practices and must reach beyond his or her own understanding and seek to be effective servants of God.

7. Throughout his employment with the Defendant, Awe gave his best efforts to the Defendant, its patients, and its employees. Aside from being a stellar employee, Awe maintained an impeccable, blemish-free and matchless record, not only in quality and standard but also in disciplinary history.

8. Indeed, Awe's superiors described him as "incredibly talented and compassionate," that he "exemplifies himself as a caring, trustworthy, dutiful, and a highly dependable team player," "plays a significant role in providing needed spiritual and emotional support to our delightful patients," "his compassionate presence and thoughtful reflective approach to

issues has put him in a position to render quality and effective spiritual and compassion care to the patients, family members and hospital staff," and that "he contributes to our team by his caring and consistent service for our patients, their family members, and the staff at our hospital."

9. At all times relevant to these proceedings, Awe was not only qualified for his job, he was *highly qualified*. Significantly, he was the first and only Board Certified Chaplain at LBJ Hospital throughout the time he was employed.

10. Throughout his employment with the Defendant, Awe worked diligently, excellently and without reproach. He delivered high-quality work and received exceptional performance reviews as well as recognition from his colleagues and superiors.

11. Around October of 2018, however, Awe discovered that he and other African American chaplains, were being underpaid and had been underpaid for at least 2 years.

12. Around November 2018, Awe lodged a complaint to that effect with Cletus Udoh, Awe's immediate supervisor and Christopher Mathews, Awe's Director.

13. Almost immediately after his complaints, Awe suffered multiple adverse employment actions at the hands of Cletus Udoh, Awe's immediate supervisor. Awe was referred to as a "whistleblower."

14. Investigation commenced on Awe's complaints and it turned out that Cletus Udoh had been derelict in his duties. The investigation revealed that Awe's complaints were valid and the underpaid Chaplains had to be reimbursed. The investigation protracted for over a year and the payment was not immediately made.

15. A few months thereafter and prior to validating Awe's complaints, however, Awe became officially Board-Certified. This was around the 1st of April, 2019.

16. At this time and throughout Awe's employment with the Defendants, his superiors, who were also Chaplains, were not Board Certified.

17. Board Certification is almost always a requirement of every vacancy announcement for a Chaplain's position at Harris Health. Board Certification is the process by which Chaplains demonstrate their competence, qualifications, and ability to function as a professional chaplain. The process of becoming board-certified is intensive. This means makes a chaplain a breed of the best in the field of chaplaincy.

18.  A purpose of board certification is to assure the public and the employing organization that the chaplain has met established national qualifications and competencies for professional chaplains, and is held to a code of ethics. To maintain Board Certification, a Chaplain must engage in 30 hours of continuing education annually and thus stay current with the knowledge, skills and best practices of their profession. Awe has maintained his Board Certification from 2019 to the present date.

19. Awe's Board Certification sparked additional mistreatments and intensified the retaliatory and adverse employment actions that Awe suffered at the hands of Udoh.

20. Before and after his Board Certification, Awe complained about discrimination and retaliation. Defendant failed to take corrective action.

21. Awe would not have suffered the multiple adverse employment actions if he had not lodged complaints about discrimination and retaliation. Awe suffered multiple adverse employment actions because he complained of discrimination and retaliation.

22. By way of example, Awe complained of discrimination and retaliation to Chris Matthews around May of 2019. Mathews set three different appointments to meet with Awe to discuss the complaint and a false write-up that Udoh lured Matthews to sign off on. At the

eleventh hour, Matthews reset or changed each of the appointments. Shortly thereafter, Udoh informed Awe that Matthews was no longer with the Defendant, Harris Health.

23. Some of the adverse employment actions include the Defendant's failure to select Awe for a Staff Chaplain position for which Awe was the most qualified. That occurred around August of 2019.

24. The selectee for the above-mentioned position was a candidate outside of Awe's protected class and possessed inferior credentials and qualifications compared to Awe's.

25. Prior to that, Awe was falsely written up for preaching to an individual who requested to be prayed with in a Christian manner because he believed he had been improperly converted to a Muslim. That was around July 2019.

26. Prior to the two false write-ups mentioned above, Awe's employment record has been impeccable and disciplinary-action free.

27. The adverse employment actions taken against Awe include giving him an unsatisfactory performance rating.

28. Another example of the adverse employment actions includes the Defendant or its agent denying Awe's request for sick leave and also for FMLA. That also occurred around August of 2019.

29. In conjunction with that, the Defendant's failed to select Awe for another Staff Chaplain position for which Awe was the most qualified. That occurred around September of 2019.

30. The selectee for the above-mentioned position was a candidate outside of Awe's protected class and possessed inferior credentials and qualifications compared to Awe's.

31. Additionally, Defendant or its agent intentionally drastically reduced Awe's hours to only 28 hours for the entire month of September 2019 because of his complaints of

discrimination and retaliation, though he was the only board-certified in the group.

32. Moreover, Defendant intentionally failed to pay Awe his full wages for no reason at all. This occurred around October of 2019.

33. Defendant or its agent intentionally failed to pay Awe's full wages because of his complaints of discrimination and retaliation.

34. Defendant or its agent failed to provide any legally cognizable reason for their failure to pay Awe's full wages and drastically reducing his hours.

35. Defendant would not have improperly withheld Awe's full wages and drastically reduced his hours if Awe had not complained about discrimination and retaliation.

36. Udoh perpetuated the perpetration of a persistently shockingly cruel, hostility against Awe without justification, basis, or excuse throughout Awe's employment with the Defendant from the moment Awe complained.

37. Around August of 2019, Awe complained to Udoh and requested a month off work

*"to heal from spiritual and emotional wounds and pain resulting from the hostile work environment that I have been subjected to since early April. I believe my work as an affective chaplain demands that I'm in a peaceful, healthy state of mind in order to offer quality spiritual services that our patients who need me for spiritual health and purposes deserve. My immediate state of mind and emotions, which at this time should be better seen and processed as an emergency, could be a negative transference to the patients I'm supposed to be assisting, should I continue work without the break that I'm asking for. (Bear in mind that I've never called in or missed my on call shifts in the 10 years I have been at LBJ)."*

Udoh refused to grant Awe's request and failed to provide Awe with any reason for his refusal. Udoh continued his hostility, retaliatory and adverse employment actions against Awe. Awe became even more distressed, dejected, and distraught.

38. Around August of 2019, Awe complained to HR (Human Resource) Manager, Jesus Miguel. Miguel requested that Awe reduce his complaint into writing. Awe complied. Miguel failed to take any corrective action to eliminate or ameliorate the adverse employment actions to which Awe was subjected. Miguel agreed that Awe needed some respite given the current situation and Awe's condition and professional demands. He assured Awe that all his concerns would be allayed. He subsequently directed Awe to Kayla White, another HR Specialist.

39. Awe then took off work around August 31, 2019, expecting his concerns to be allayed as promised so he could return to work.

40. On or about September 3, 2019, Awe spoke with Kayla White ("White") and complained about discrimination, retaliation and hostile work environment, expressing a strong interest in being removed from the hostile work environment. He informed White that he had spoken with Miguel and had remained off work for about three days. White promised that all the issues would be addressed and the matter resolved. White informed Awe that there was an opening at Ben Taub. Awe and White discussed transferring Awe to Ben Taub, another division of the Defendant's so that Awe could return to work. Awe informed White that he had already applied for the position.

41. White informed Awe that his interest will be prioritized by management so as to remove him from his present work environment and he could return to work. Further, she stated that she had to confer with management and Udoh, Awe's supervisor, to effectuate the transfer. The conversation ended with White promising to get back to Awe within the next two days.

42. Awe did not hear from White until about almost a month later when he called her and

asked why he has not heard from her. White rushed Awe off the phone and promised to send him an email that same day. In her email, White reiterated that she and Awe spoke on September 3 and September 30, 2019 but tweaked the substance of their conversations and her promises to Awe. Specifically, regarding the transfer, she wrote "*I did encourage you to apply within the system to our BT location, that seemed to have a fulltime position available, and stated I would reach out to the leadership there to inform them of your interest. Lastly, I informed you that I would follow up with your leadership to address your concerns.*"

43. Regarding the time off work requested, though White initially agreed that Awe needed time off work and promised to have management take prompt corrective action, she now states Defendant "*could not accommodate your request for to (sic) the urgency of the Department to offer a 100% response rate*." Moreover, knowing that Awe had been away from work since August 31, 2019, White wrote "*in today's discussion … you also confirmed that you have not had any issues with Chaplain Udoh since we last spoke*."

44. White's email closed with "*As of now, Leadership and I are discussing the next steps in addressing these concerns. Should you experience any further problems, I encourage you to seek a trusted member of your chain of command and/or reach back out to me.*"

45. While waiting for White's response, Awe sought professional help around mid-September 2019 and saw Dr. Michael Ditsky, a Clinical and Forensic Psychologist.

46. Upon evaluation  and/or examination of Awe, Dr. Ditsky noted moderate depression and anxiety. Dr. Ditsky recommended therapy/counseling but not with him (Dr. Ditsky) due to conflict of interest.

47. Apart from being a chaplain, Awe is also a pastor. He strongly believes in resolving

matters affably, amicably, and convivially. He preaches in favor of resolution short of court intervention. He believes litigation should be avoided at all costs and utilized only as a last resort.

48. In furtherance of Awe's effort to resolve his issues short of any form of litigation, via an email dated October 2, 2019, Awe contacted Omar Reid, the Vice President of HR of Harris Health System, Patricia Darnauer, the CEO of LBJ Hospital, and Allison Bashir, the Director of HR of Harris Health System regarding his complaints and contact with White.

49. Awe closed his email of October 2, 2019 with "***I'm humbly requesting the intervention of our able Administrator, Patricia Darnauer, Omar Reid (Sr. VP HR) and Allison Bashir (Dir.HR Org. Ser.) in this urgent matter that has caused me much pain***."

50. About a week later, Allison Bashir ("Bashir") contacted Awe and promised to look into the whole matter.

51. Awe did not hear from Bashir for about two months. Thus, he emailed Bashir on December 2, 2019, and inquired about the status of his case and when she would be looking into same as promised. In his email, Awe notes, *inter alia,* that "***In the last part of our conversation, you promised to look into the matter and address my concerns. You also said you would at the least meet some of my requests/resolutions, following investigations***." Awe listed the proposed solutions promised by Bashir and how she had failed to make good on her promise except short-paying his wages for the pay period of August 18-31. Additionally, Awe reminded Bashir that he had ***"not been working and this has put [him] in a deep financial stress. Aside, my feelings remain badly hurt and my emotions sorely bruised with no hope for healing with the way I've been treated and the on-going neglect perpetrated toward me by the top administration who I had held in***

*high esteem as an icon of fairness and care."*

52. By an email dated December 12, 2019, Bashir responded to Awe's email of December 2, 2019 and essentially agreed with White, addressing only the Whistleblower complaint i.e. the underpayment of the chaplains for two years. Bashir stated that the investigation on that claim "had been ongoing prior to [Awe's] allegation of retaliation" and requested that Awe provide the documentation he had to support his allegations as they were unfounded.

53. Furthermore, Bashir stated that she would tell Awe's Leadership to put Awe back on schedule as a Supplemental Staff Chaplain.

54. The only leadership Awe had was Cletus Udoh from whom Awe was seeking refuge due to the horribly shocking hostile work environment to which Awe had been subjected.

55. Awe expressed his disappointment in his response to Bashir as he believed that the investigation of his complaints, if any, was "shallow."

56. Bashir, the Director of HR in Harris Health System, is an attorney and has been licensed to practice law for over 15 years.

57. Upon her receipt of Awe's response, albeit to create the impression that Defendant Harris Health cared and was interested in resolving Awe's complaints, Bashir asked Awe to meet with her and Omar Reid, the V.P. of HR in Harris Health on December 24, 2019.

58. Awe complied and met with both of them accordingly. It became obvious at the meeting that Omar Reid was totally oblivious of the facts of the case or the subject matter to be discussed. Awe informed both Bashir and Reid how he was constantly depressed and traumatized at work and that he was afraid to go to work due to Udoh's maltreatments. He discussed how his Canon of Ethics prohibits rendering spiritual care to anyone unless the chaplain is spiritually fit.

59. In any event, Bashir and Reid "deposed" Awe for no less than 90 minutes, asking him all possible questions that anyone can think of. At the end of their meeting, both Bashir and Reid promised to procure the services of an independent, professional chaplain who would review the concerns raised by Awe. The chaplain's decision was expected to resolve most of Awe's complaints and would be final.

60. Awe expressed his appreciation and waited for the appointment of an independent Chaplain who would review the matter so he could return to work.

61. Instead of procuring the services of a professional chaplain to resolve the matter as promised by Bashir and Reid, Udoh contacted Awe asking him to return to work during the week of January 19, 2020. Awe informed Udoh that he was awaiting word from management and that he expected management intervention to provide a resolution to the pending issues and would return to work once that was attained.

62. On January 9, 2020, Bashir sent an email to Awe stating that

"*I am reaching out to you as it has come to my attention that you were contacted by Cletus Udoh to return to the schedule the week of January 19, 2020, but you said you were unable to return until you heard back from management regarding the meeting you had. Assuming that you were referring to the meeting you had with Omar and I on December 24, 2019, please let me know what you need to hear from us in order to return to work. During our conversation with you, we emphasized that there was no impediment to you being able to return to work when asked.*"

63. Shocked at Bashir's response, Awe sent an email on January 14, 2020 to Bashir stating in pertinent parts "*we agreed that a professional chaplain who is not in the dark relating to the principles and ethics of Spiritual Care/Chaplaincy should be called in to carefully assess the concerns for a fair adjudication. I believe such a move would involve talking*

*to the parties involved before a determination is made. To my knowledge, this has not been done. To expect me to return to work now without carrying out those recommendations indicates that you have not come to grips with the intensity of my suffering.*" Similarly, Awe notes that "*though your deduction from our meeting (of Dec 24) was that there was no impediment to my return to work, I wonder how you could have reached that conclusion unless you had continuously disregarded my original concerns and submissions.*"

64. Bashir responded three days later distorting just about everything that was promised or agreed upon, stating in pertinent parts "*at the end of our conversation, we committed to providing an update on the investigation into wages you may be owed based on services you've provided and on having someone well-versed in chaplaincy review and provide feedback on your write-up.*"

65. In March of 2020, payment was made on the 3 years arrears of chaplains' underpayment – the complaint made by Awe around November of 2018. Defendant forwarded a release to Awe for Awe's signature on that claim. Awe signed it. Bashir then sent an email to Awe, confirming that the wage claim was closed and that there are no barriers to Awe being able to return to work. Further, Bashir threatened that unless Awe returned to work, *"you will leave us with no other option but to recommend separating you from Harris Health System employment."*

66. On April 21, 2020, Udoh sent an email requesting Awe's availability for work. Awe responded the same way he did previously.

67. On April 24, 2020, Udoh fired Awe.

68. In furtherance of his efforts to resolve the matter short of litigation, on April 26, 2020,

Awe sought the intervention of the new Harris Health CEO, Dr. Esmaeil Porsa.  Porsa failed to respond to Awe.

69. In additional furtherance of his efforts to resolve this matter short of litigation, Awe contacted and eventually reached Cheryl Pearson, Manager, Board of Trustees in June 2020. Pearson promised to pass Awe's complaints to the CEO and the Board. Awe did not receive any response from the CEO or the Board.

70. Again, in furtherance of his relentless effort to resolve this matter short of litigation, Awe contacted the Board, Harris Health, on June 24 and 25, 2020. He was told that a representative of The Board will contact him. Nobody did for over 3 weeks.

71. On July 18, 2020, a representative of The Board contacted Awe and asked what he needed the Board to do. Awe informed the representative that he wanted his full time Chaplain job which he was denied as a result of discrimination and retaliation against him. The representative told Awe that according to Reid, Awe was fired because he failed to show up for work. Awe informed the representative that his complaints were not addressed and that his life was not safe with Udoh. The representative essentially conveyed the impression that they wanted to help Awe but that their hands were tied. They encouraged Awe to reapply.

72. Nonetheless, in Awe's continuous effort to resolve his matter short of litigation, he contacted The Board's office and sent another letter to the Board "to hear [him] out." The Board met Awe virtually in November of 2020 and told him that his superiors would get in touch with him. Awe informed the Board that he did not believe that his case should go to Court.

73. Awe called multiple times but did not hear from anyone until January 5, 2021. Reid sent an

email reiterating his previous position. Additionally, he indicated that all of Awe's complaints had either been resolved or had no merits.

74. Awe contacted Reid and informed him that the promises made at the December 24, 2019 meeting were not upheld. He requested that the Board be provided with the truth and that he would not purposefully stay away from work as he loved his work.  Reid was hesitant to go over Awe's complaints again. Awe stated that their failure to address his complaints and support Udoh's maltreatment of him is itself discriminatory and retaliatory and that he would pursue the matter further with the Board. Awe attempted to remind Reid of their conversation and in the process, engaged in a protected activity. Reid was not interested in continuing the conversation and abruptly ended it.

75. In the meantime, since Dr. Ditsky was unable to continue to treat Awe, and as his condition and particularly his mental condition deteriorated, Awe ended up with Bishop Apostle Amos Oyewale.

76. Bishop Apostle Amos Oyewale has since provided continuous counseling to Awe.

77. Around July 2021, Awe applied for a Staff Chaplain position at Harris Health. Awe was highly qualified for the position.

78. Awe contacted the Board's office after applying for the position to notify the Board of his application for the new Staff Chaplain position. A representative of the Board wondered why he applied for the position. Awe informed the representative that he was following instructions and that he was qualified for the position. Awe, *inter alia,* engaged in protected activities. In the conversation, the representative asked Awe why Awe thought Defendant would reconsider him now. Awe responded that failure to reconsider him for a position he qualified for will itself be retaliatory and discriminatory as it would not only be supportive of the previous

discrimination and retaliation that he already suffered at the hands of the Defendants but also would be without basis. The representatives stated that they would let the others know.

79. In August of 2021, Defendant rejected Awe for the position he qualified for. Defendant did not even give Awe an interview.

80. The selectee for the above-mentioned position was a candidate outside of Awe's protected class and possessed inferior credentials and qualifications compared to Awe's.

81. At all times relevant to these proceedings, and during the progress of the incidents described herein, Defendant's employees identified herein were acting within the course and scope of their employment with Defendant, furthering Defendant's interests, and under the supervision and/or control of various superiors in the Defendant's hierarchy, and as such their actions are fully attributable to Defendant through *Respondeat Superior* and/or under Title VII and ADEA.

82. Plaintiff alleges that his complaints prior to and including his discharge from employment in 2020 constitute protected EEO activities and constitute discrimination under Title VII and ADEA and are realleged herein for initial and relevant factual background purposes.

83. Plaintiff further alleges that his actions and complaints in 2021 are actionable as discrimination based on age and retaliation under Title VII and ADEA.

84. Plaintiff alleges that his actions and complaints he made caused him to suffer all the retaliatory acts described herein and the denial of the 2021 position.

85. These allegations are based, *inter alia,* upon the facts that Plaintiff worked for the Defendant for over one decade, not only without complaint or incident but with accolades and commendations. Plaintiff was, up until the time he complained about underpayment of the African-American Chaplains and announcement of his Board

Certification, an exemplary employee, whose personnel file was impeccable. Plaintiff alleges that his complaints about discrimination, retaliation and hostile work environment from 2019 to 2020 caused him to experience the materially adverse employment actions as stated herein as the employees taking the adverse actions against him were aware of his complaints.

86. Additionally, Plaintiff alleges that he is significantly more qualified and/or older than the person who was hired for the 2021 position and/or significantly more qualified than the employees who were treated more favorably than him.

87. Plaintiff alleges that, the actions of the Defendant or their agents/employees impaired Plaintiff's enjoyment of all benefits, privileges, terms, and conditions of his employment and the Defendant's failure to hire him for the 2021 position was not only discriminatory, but also retaliatory.

88. All condition precedents have been met or satisfied by the Plaintiff, in that prior to filing the instant lawsuit Plaintiff filed charges with the EEOC. *See Right to Sue letter*, dated June 15, 2022, a true and correct copy of which is attached hereto.

89. Plaintiff alleges that the EEOC did not conduct an investigation of Plaintiff's charge.

90. In fact, the TWC found some merits in Plaintiff's claim and awarded him benefits due to Defendant's wrongful conduct.

91. The incidents described herein above, and the Defendant's conduct, have caused the Plaintiff to suffer serious harm and injuries, loss of dignity, and loss of respect.

92. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression; humiliation; embarrassment; stress; and loss of self-esteem and self-confidence, for which Plaintiff is entitled to receive an award of monetary damages and other relief.

93. In addition to the aforementioned injuries, Plaintiff has endured lost wages as a direct and proximate result of Defendant's unlawful conduct, and seeks compensation in the form of both front-pay and back-pay.

94. Plaintiff has been further injured as a direct and proximate result of Defendant's unlawful conduct in that he has been unable to find a like or similar job after being wrongfully and prejudicially terminated by the Defendant. This has caused Plaintiff to suffer great hardship and instability, both financially and otherwise.

95. Plaintiff has suffered economic and non-economic damages as a direct and proximate result of Defendant's unlawful conduct.

## COUNT ONE, DISCRIMINATION BASED ON AGE

96. The allegations of the above paragraphs and the allegations in the paragraphs below are re-alleged and incorporated by reference herein.

97. The Defendant's conduct as alleged in the above paragraphs constitutes age discrimination in violation of ADEA since Awe is over 60 years of age; was not hired for the 2021 staff chaplain position, which was offered to someone outside of Awe's protected class, though Awe was much more qualified than the selectee for the position.

98. Defendant intentionally discriminated against Awe who was the first and only Board Certified Chaplain at the facility and who possesses superior qualifications and credentials compared to the selectee's.

99. Defendant intentionally treated Awe less favorably than those who did not fit within Awe's protected class despite Awe's superior qualifications for the Staff Chaplain position.

100.    The Defendant's intentional refusal to interview Awe evinces the Defendant's

discriminatory animus against Awe. Defendant intentionally rejected Awe for the 2021 Chaplain position because of his age or would not have discriminated against him but for his age.

101.    Defendant regularly hires individuals that are significantly younger than Awe. In fact, Defendant did so in the two previous positions Awe was wrongfully denied.

102.    The stated reasons for the Defendant's conduct were not the true reasons, but instead were  pretext to hide the Defendant's discriminatory animus, as shown herein, above.

## COUNT TWO, RETALIATION

103.    The foregoing paragraphs are re-alleged and incorporated by reference herein.

104.    The Defendant's conduct as alleged above constitutes retaliation against the Plaintiff because he engaged in activities protected by Title VII and the ADEA.

105.    Adverse actions were taken against him  by the Defendant or their agents who were  aware  of and  had  knowledge of his complaints. His complaints caused them to take to actions against him, as  they were taken because he complained and/or engaged in protected activities.

106.    He would not have been rejected for the 2021 chaplain position had he not engaged in protected activities.

107.    Defendant intentionally discriminated against Awe who was the first and only Board Certified Chaplain at one of Defendant's two hospitals and who possesses superior qualifications and credentials compared to the selectee's.

108.    The Defendant's intentional refusal to interview Awe evinces the Defendant's retaliatory animus against Awe.

109.   Awe was treated less favorably than those who did not fit within Awe's protected class.

110.   Defendant regularly retaliates whenever their employees engage in protected activities. In fact, Defendant had, prior to this particular instance, taken adverse employment actions against Awe as described above to retaliate against him after he engaged in protected activities. In this instance, he engaged in protected activities and suffered adverse employment action in that Defendant failed to hire him for a position that he was superiorly qualified for.

111.   The stated reasons for the Defendant's conduct were not the true reasons, but instead were  pretext to hide the Defendant's retaliatory animus, which is also shown herein above.

## Prayer for Relief

**WHEREFORE,** the Plaintiff requests that the court award him:

a) Reinstatement to his position – Staff Chaplain with all attendant back pay, benefits and other emoluments of employment.

b) Compensatory damages suffered because of the discrimination and retaliation.

c)  Front pay as necessary;

d) Costs and reasonable attorneys' fees incurred with this lawsuit with interest thereon; and

e)  other damages and further relief as deemed just.

## JURY DEMAND

The Plaintiff requests trial by jury.

Respectfully submitted,

**THE GBENJO LAW GROUP**


By:  **/s/** *A. Sampson Gbenjo*

A. Sampson Gbenjo
Texas Bar No. 24043047
**E-mail:  yourlawgroup@yahoo.com**
Huey P Carter, Jr.
Texas Bar No. 03916750
**E-mail: attorneyhpcarter@aol.com**
9009 Bissonnet Street
Houston, TX 77074
Tel. (713) 771-4775
Fax. (713) 771-4784
**ATTORNEYS FOR PLAINTIFF**


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been forwarded to counsel of record by electronic notification on this 26th day of December, 2022, addressed as follows:

Michael D. Fritz
Assistant County Attorney
OFFICE OF CHRISTIAN MENEFEE
HARRIS COUNTY ATTORNEY
Michael.Fritz@harrishealth.org
4800 Fournace Place
Sixth Floor, East Wing
Bellaire, Texas 77401
(346) 426-0326


**/s** / *A. Sampson Gbenjo*

A.  Sampson Gbenjo


21